SOUTHWESTERN RESOLUTION
CORPORATION, Petitioner,

v.

Vernon Lee WATSON, individually, and
First Texas Realty Corporation,
Respondents.

No. 97–0148.

Supreme Court of Texas.

Oct. 30, 1997.

Rehearing Overruled May 8, 1998.

John M. Killian, Judith Lee Ramsey, San Antonio, for Petitioner.

Brently Wayne Free, Jonathan H. Hull, New Braunfels, for Respondents.

PER CURIAM.

An indorsement of a negotiable instrument must be written on the instrument itself or on a paper affixed to the instrument. The dispositive issue in this case is whether an indorsement on a paper stapled and taped to a note meets this requirement as a matter of law. We hold that it does.

Southwestern Resolution Corporation purchased a promissory note executed by First Texas Realty Corp. to Canyon Lake Bank for the principal sum of $85,000, a guaranty of the note by First Texas' president, Vernon Lee Watson, and a deed of trust securing payment of the note. The note is printed on an 8½" × 14" sheet of paper so that it completely covers both sides except for a 2" × 4" area at the bottom right corner on the back. That area is filled by an indorsement from

the Federal Deposit Insurance Corporation, receiver for Canyon Lake Bank, to Intervest Capital Corp. There is no space on the note for another indorsement. On a separate 8½" × 11" sheet of paper—an allonge—are two indorsements, one from Intervest to Dosohs, Inc., and the other from Dosohs to Southwestern. The allonge does not refer to the First Texas note.

Southwestern sued First Texas and Watson on the note and guaranty. At trial, Southwestern's president testified that Southwestern owned the note, having purchased it from Dosohs, and that nothing had ever been paid on it. When the note and allonge were produced at trial, they were taped together and both had several staple holes in them. Southwestern's president, Charles Hummel, testified that when Southwestern received the note the allonge was stapled to it and may also have been clipped and taped, but that the note and allonge had been separated and reattached five or six times for photocopying.

■■■ The rights of the parties are governed by the Uniform Commercial Code as it was adopted in Texas prior to the 1995 amendments. With certain exceptions, a transferee of an instrument receives whatever rights his transferor has. Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2416 (formerly TEX. BUS. & COM.CODE § 3.201(a), now § 3.203(b)). If the transferee is a holder, he is entitled to recover on the instrument when the signatures are admitted or established unless the defendant establishes a defense. *Id.* at 2422 (formerly TEX. BUS. & COM.CODE § 3.307, now § 3.308). If the transferee is not a holder, he is not aided by the statute and must prove the rights of his transferor and, of course, any prior transferors. A transferee cannot be a holder unless the instrument is negotiable. *Id.* at 2417 (formerly TEX. BUS. & COM.CODE § 3.202(a), now § 3.201(a)). For an instrument to be negotiable, former section 3.202(b) required that any indorsements must be written "on the instrument or on a paper so firmly affixed thereto as to become a part thereof." *Id.* The current statute provides that "[f]or the purpose of determining whether a signature is made on an in-

strument, a paper affixed to the instrument is part of the instrument." TEX. BUS. & COM.CODE § 3.204(a).

■■■ Southwestern claims to be a holder of the First Texas note, and it did not prove what rights the FDIC, Intervest, or Dosohs had. Based on the jury's failure to find "that the indorsement page is so firmly affixed to the promissory note as to become a part thereof", the district court rendered judgment against Southwestern. The court of appeals affirmed, holding that Hummel's admission that the note and allonge had been detached and the multiple staple holes in the two pages were some evidence that the allonge and note were not "firmly affixed". —— S.W.2d ——. We believe, however, that Southwestern proved that the allonge and note were firmly affixed as a matter of law.

The court of appeals cited no authority for its holding, and we are aware of none. There is authority to the contrary. The use of an allonge to add indorsements to an instrument when there is no room for them on the instrument itself dates from early common law. *Adams v. Madison Realty & Dev., Inc.,* 853 F.2d 163, 167 (3rd Cir.1988). Section 31 of the Uniform Negotiable Instruments Law, adopted in Texas in 1919, provided that an "indorsement must be written on the instrument itself or upon a paper attached thereto." Act of March 17, 1919, 36th Leg., R.S., ch. 123, § 31, 1919 Tex. Gen. Laws 190, 194. The allonge could be attached by a staple. *Plattsmouth State Bank v. Redding,* 128 Neb. 268, 258 N.W. 661, 663 (1935). When the UCC changed the requirement from "attached thereto" to "so firmly affixed thereto as to become a part thereof", Law of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2417 (formerly TEX. BUS. & COM.CODE § 3.202(b)), the drafters of the new provision specifically contemplated that an allonge could be attached to a note by staples. AMERICAN LAW INSTITUTE, COMMENTS & NOTES TO TENTATIVE DRAFT No. 1—ARTICLE III 114 (1946), *reprinted in* 2 ELIZABETH SLUSSER KELLY, UNIFORM COMMERCIAL CODE DRAFTS 311, 424 (1984) ("The indorsement must be written on the instrument itself or on an allonge, which, as de-

fined in Section ___, is a strip of paper so firmly pasted, stapled or otherwise affixed to the instrument as to become part of it.").

Attachment of an allonge to an instrument by staples was approved in *Lamson v. Commercial Credit Corp.,* 187 Colo. 382, 531 P.2d 966, 968 (1975) ("Stapling is the modern equivalent of gluing or pasting."), and was assumed to be appropriate in *Adams,* 853 F.2d at 166, and *Estrada v. River Oaks Bank & Trust Co.,* 550 S.W.2d 719, 725 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Only when an allonge has been considered unnecessary because the instrument contained room for indorsements has attachment by staples been disapproved. *E.g. Crossland Sav. Bank v. Constant,* 737 S.W.2d 19, 21 (Tex.App.—Corpus Christi 1987, no writ); *Pribus v. Bush,* 118 Cal. App.3d 1003, 173 Cal.Rptr. 747, 749 (1981). *See generally* V.G. Lewter, Annotation, *Indorsement of Negotiable Instrument by Writing Not on Instrument Itself,* 19 A.L.R.3d 1297 (1968).

The attachment requirement has been said to serve two purposes: preventing fraud and preserving the chain of title to an instrument. *Adams,* 853 F.2d at 167. Still, the requirement has been relaxed in the current code from "firmly affixed" to simply "affixed". TEX. BUS. & COM.CODE § 3.204(a). As the Commercial Code Committee of the Section of Business Law of the State Bar of Texas concluded in recommending adoption of the provision, "the efficiencies and benefits achieved by permitting indorsements by allonge outweigh[ ] the possible problems raised by easily detachable allonges." Daryl B. Robertson, *Report of the Commercial Code Committee of the Section of Business Law of the State Bar of Texas on Revised UCC Articles 3 and 4,* 47 BAYLOR L.REV. 427, 459 (1995).

We conclude that an allonge stapled to an instrument is "firmly affixed" to the instrument. In the present case, Southwestern's president testified that the allonge was stapled, taped, and clipped to the note when Southwestern received it. There was no evidence to the contrary. The fact that the documents had been detached for photocopying does not raise a fact issue for the jury

about whether the documents were firmly affixed. If it did, the validity of an allonge would always be a question of the finder of fact, since no allonge can be affixed so firmly that it cannot be detached. One simply cannot infer that two documents were never attached from the fact that they can be, and have been, detached. Nor could the jury infer from the staple holes in the two papers, as the court of appeals suggested, that the two documents had not been attached. This would be pure conjecture.

The issue here is not how the documents were attached—the facts in that regard are undisputed—but whether the way they were attached satisfies the policies expressed in the statute. We hold that the policies are satisfied and that therefore, as a matter of law, the allonge was firmly attached to the First Texas note so as to make it negotiable. Inasmuch as First Texas and Watson did not establish any defense to enforcement of the note, guaranty, and deed of trust, Southwestern is entitled to judgment against First Texas and Watson for the principal plus interest, and for enforcement of its security.

Southwestern's president testified that no payment had been made on the note. In his deposition, Watson admitted that no payment had been made, but at trial he testified that he had made one payment of $2,785.20. Thus the evidence was disputed as to the exact amount due on the note. Although Watson did not plead payment, an affirmative defense, TEX.R. CIV. P. 94, Southwestern did not object to his testimony or to submitting the issue to the jury. Thus the issue was tried by consent. TEX.R. CIV. P. 67. The jury found that nothing was due on the note, presumably because they found that the allonge was not firmly affixed to the note, since the evidence is undisputed that at most one payment was made. But because the amount due was not established without dispute, that issue must be remanded for retrial.

Accordingly, the Court grants Southwestern's application for writ of error and, without hearing oral argument, reverses the judgment of the court of appeals and remands the case to the district court for new

trial only on the issue of damages, including attorney fees. Tex.R.App. P. 59.1.