**CROSSLAND SAVINGS BANK FSB, Appellant,**

v.

**Anthony F. CONSTANT and Russell McMains, Appellees.**

No. 13–87–092–CV.

Court of Appeals of Texas, Corpus Christi.

July 6, 1987.

Rehearing Denied Aug. 28, 1987.

M.W. Meredith, Wilson Calhoun, Corpus Christi, for appellant.

James H. Robichaux, Corpus Christi, for appellees.

Before KENNEDY, SEERDEN and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Crossland Savings Bank (Crossland) appeals the temporary injunction order issued by the trial court to prevent Crossland from attempting to recover on two promissory notes issued by appellees.

Appellees sued Intercontinental Wind Associates (IWA) for, among other things, breach of contract, rescission, and for violation of the Texas Deceptive Trade Practices Act (DTPA), arising from IWA's sale to them cf large wind turbine generators constructed on land in California.[1] They also sued Intercontinental Capital Resources, Inc., (ICR) and Crossland, alleging that they conspired with IWA to deceptively induce appellees to execute promissory notes in partial payment for the generators. In addition, appellees sought a temporary injunction preventing Crossland from enforcing the promissory notes. The trial court enjoined Crossland from recovering on the notes pending outcome of the suit on the merits, from which action Crossland appeals.

By its first five points of error, Crossland contends the trial court's temporary injunction order is in error since Crossland, not appellees, would ultimately prove successful on its attempt to recover on the notes.

For a temporary injunction to be issued, a party must plead and prove a probable injury if temporary equitable relief is denied, and a probable right to recovery; the party need not establish final success in the litigation. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968); *Ballenger v.*

*Ballenger*, 694 S.W.2d 72, 76 (Tex.App.— Corpus Christi 1985, no writ).

Appellate review of an order granting or denying injunctive relief is strictly limited to a determination of whether the trial court abused its discretion. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978). The reviewing court should make every effort to uphold the trial court's judgment on any theory supported by the record. *See id.* at 862. The ultimate question before the trial court is whether the applicant is entitled to the preservation of the status quo. *Ballenger v. Ballenger*, 694 S.W.2d 72 (Tex.App.— Corpus Christi 1985, no writ).

Crossland claims appellees waived any defenses to repayment of the notes by signing an "Acknowledgment and Agreement" in which they purportedly waived any claims, defenses or offsets that they may have against the payee of the notes or any assignee. The note itself contained a similar waiver provision. Under the Texas version of the Uniform Commercial Code,[2] the two notes are negotiable instruments and so are governed by the Code. Such waivers are allowed by the Code, but are expressly made subject to "any statute or decision which establishes a different rule for buyers or lessees of consumer goods." Section 9.206(a).

The Texas Deceptive Trade Practices Act provides that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void." Tex.Bus. & Comm. Code Ann. § 17.42 (Vernon Supp.1987). At the trial court level, Crossland stipulated that for purposes of the temporary injunction proceeding, appellees had a probable right of recovery in their suit against the sellers of the generators and a probable injury. The stipulation did not specify which of appellees' pleaded claims were valid. One of the causes of action pled by appellees was under the DTPA. Thus, the

---

1. Appellees characterize the transaction as a purchase of consumer goods, which Crossland disputes. As explained later, Crossland has waived this argument due to a stipulation it made.

2. Tex.Bus. & Comm.Code Ann. §§ 1.101–11.108 (Tex.UCC) (Vernon 1968 & Supp.1987). All section citations are to this Act.

stipulation can be read to concede that all of appellees' claims against IWA, including those under the DTPA, were valid and that they would recover under them. Therefore, for purposes of this appeal only, we find that the waivers by appellees are unenforceable.

Nor is it necessary to consider whether appellees purchased "consumer goods" under the DTPA, as Crossland contends. The stipulation provided that appellees would probably recover on their claims against IWA. Implicity, then, Crossland agreed that appellees would successfully prove all the elements of their causes of action, including their purchase of consumer goods.

Even if the waivers are ineffective, Crossland also claims to be a holder in due course of the two notes, thereby defeating any of the possible defenses to payment raised by appellees. A holder is defined as a person who is in possession of a negotiable instrument drawn, issued, or indorsed to him. Section 1.201(20). A holder in due course is a holder who takes the instrument for value, in good faith, and without notice of any defense against or claim to it by another. Section 3.302. If Crossland is deemed to be a holder in due course, it can recover on the notes despite the validity of appellees' claims against IWA, since none of the so-called "real" defenses seem to apply here. Section 3.305(b).

A valid negotiation is necessary to make a transferee a holder. Section 3.202(a). Negotiation of appellees' notes from ICR to Crossland required a proper indorsement by ICR and delivery to Crossland. *Id.* The trial court concluded that Crossland was not a holder of the notes, let alone a holder in due course, since ICR's attempt to indorse the notes was invalid.

ICR's agent attempted to indorse the notes to Crossland by stapling two separate pieces of paper to the back of two sets of documents, each being eight pages long. Each set included an amendment to the private placement memorandum (part of the original contract between IWA and appellees), one of the notes, and a power of attorney, in that order. The purported in-dorsements on the single sheets of paper provide, "Payable to the order of [Crossland], without recourse." They are signed, "INTERNATIONAL CAPITAL RESOURCES, INC. BY: William P. Boyle, Jr., President."

Section 3.202(b) requires an indorsement to be written on the instrument "or on a paper so firmly affixed thereto as to become a part thereof," called an "allonge." The courts are split concerning whether stapling an indorsement to a note constitutes "firm affixation" under the UCC. *See generally* Hawkland & Lawrence, UCC Series § 3-202.05 (Art. 3) (1984 & Supp 1986); Annot., 19 A.L.R.3d 1297 (1968).

█ The trial court determined that these sheets of paper did not constitute valid allonges because of the way they were stapled together and because there was sufficient room on the notes for the indorsements to be placed thereon. We cannot say the court abused its discretion in finding that no valid allonge existed where, as here, the purported indorsements were not attached next to the notes themselves but were each stapled to the back of another document in a group of documents which included the notes. The court's action also conformed with the general rule that an allonge may be used only where there is not adequate space on the instrument for an indorsement. *See Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719, 725 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

There being no valid indorsement to Crossland, it is a mere transferee of the note and not a holder. Section 3.202(a).

█ Nor can Crossland take shelter in its transferor's rights. If ICR was a holder in due course of the notes, then Crossland could assert the rights of a holder in due course regardless of Crossland's status as a mere transferee. Section 3.201(a).

Appellees testified that shortly after they executed notes to IWA as payee, they were sent new front pages, along with other documents, which replaced IWA with ICR as payee. The appellees initialed the pages reflecting the change, and ICR in

turn assigned the notes to Crossland. Appellees argued that the switch was deceptive and part of a conspiracy to attempt to make Crossland a holder in due course of the notes.

Based on the record before us, we cannot say that ICR acted in good faith and without notice when the payee on the original notes was switched from IWA to ICR. Sufficient evidence exists to support the trial court's finding that ICR was involved in the allegedly misleading and deceptive switch. IWA's agent, Jim Thomas, testified that ICR or Crossland refused to fund the notes unless the payee was changed. Appellees testified that the document switching the payees was thrust on them in a "hurry up" fashion, and that ICR failed to bring the switch to their attention. Since ICR did not act in good faith when it became the payee, it is not a holder in due course of the notes.

Since Crossland is not a holder in due course nor has the rights of one, it took the notes subject to many defenses to payment against the seller, IWA, including breach of contract and rescission as alleged in the petition. Section 3.306(2), (3). Crossland's stipulation that these claims were valid and that appellees would probably recover from IWA again works to defeat any attempt by Crossland to enforce the notes.

We overrule Crossland's first five points of error.

By its last two points, Crossland asserts the trial court erred because appellees have an adequate legal remedy and Crossland's harm under the injunction is greater than appellees' harm would be without the injunction.

 Injunctive relief will not be granted unless the applicant has shown that irreparable injury will result if relief is not granted and that the applicant has no adequate remedy at law for damages which may result pending litigation. *Brazoria County Appraisal District v. Notlef, Inc.,* 721 S.W.2d 391, 392 (Tex.App.—Corpus Christi 1986, no writ).

The trial court found that appellees would suffer irreparable harm if Crossland

is permitted to recover on the notes pending trial; a forced sale of the wind turbine generators would be possible, thereby causing appellees to lose their claim against IWA for rescission of the contract since they would be unable to return them to IWA. At most, delaying Crossland's recovery on the note, should it prove itself entitled to recover in the suit on the merits, is only a mere inconvenience to Crossland; the trial court indicated that it took Crossland's potential loss in the use of money into consideration when it set the bond, and that it would compensate Crossland with lost interest if it eventually prevailed on the merits.

We hold that the trial court did not abuse its discretion in maintaining the status quo pending trial. We AFFIRM the trial court's temporary injunction order.